STATE, JAMES W. CHRISTIE, PROSECUTOR, v. ROBERT R. VANDERBURGH ET AL.

1. Surveyors and justices, in proceedings to remove encroachments upon the public highway, are first required to ascertain, if possible, the true location of its boundaries, whether laid out by surveyors, &c., under the Road act, by dedication or long-continued user by the public, and to maintain those boundaries against encroachments.
2. When such boundaries are not practically susceptible of ascertainment,

Christie v. Vanderburgh.

but the width of the road is known, there is ground for such doubt as under the statute permits widening on each side equally.

3. They have not authority to open new roads under the power conferred on them or take private property for public use.

4. The certificate required by the statute should be certain as to the persons encroaching and the extent of the encroachment.

On *certiorari.*

This writ brings up for review the proceedings and written determination of Robert Vanderburgh and John M. Lucas, two justices of the peace of Middlesex county, and William I. Huffman and John A. Mount, surveyors of the highways of the township of Monroe in said county, who were called to view and determine respecting encroachment upon one of the public highways in said township, within the limit and division of Mount Davison, overseer. Their certificate bears date February 24th, 1883. And by it the prosecutor who owned and occupied adjoining lands was found to have encroached upon the highway, and his fences were removed by said order.

The prosecutor presented the following reasons for setting aside the determination, return and proceedings brought up by the writ of *certiorari:*

1. Because there is a material and fatal variance between the application of the overseer of the highways to the said justices and surveyors of the highways and the determination and return of the said justices and surveyors made in pursuance thereof.

2. Because there is a material and fatal variation between both the said application and determination or return and the original survey and return of the said highway.

3. Because the said determination does not state, with legal certainty, the alleged encroachments or where the same are.

4. Because the said determination does not designate to what width the said road should be opened on the lands of the prosecutor and others.

Christie v. Vanderburgh.

5. Because the said determination does not state and designate the encroachments or what shall be removed.

6. Because the said determination does not fix or designate, with legal certainty, the outside limits to which the said road should be opened over the lands of the prosecutor and others.

7. Because the prosecutor has not narrowed or encroached on the said road.

8. Because the said road is and was not narrowed or encroached upon along the lands of the prosecutor.

9. Because the prosecutor had no legal and sufficient notice of the proceedings of the said justices and surveyors.

10. Because the said determination and proceedings are each and every of them in divers other respects irregular, illegal, unjust and oppressive to the prosecutor.

Argued at February Term, 1884, before Justices KNAPP, DIXON and MAGIE.

For the prosecutors, *E. W. Arrowsmith* and *Chillion Robbins*.

For the defendant, *Howard McSherry*.

The opinion of the court was delivered by

KNAPP, J.   The prosecutor complains of injury in illegally taking his lands for a public highway through proceedings of justices and surveyors of the highways formally instituted for the removal of encroachments.   The writ brings before us the call of the overseer of the highways, the notices to the adjoining owners of land and the determination in writing of the township officers who, under the statute, are given jurisdiction over the subject.   The road found by the officers to be encroached upon is the last course called for in a return of surveyors of the highways laying out a public highway two and one-half rods wide and over six miles long, in Middlesex county.

The return is dated April 6th, 1815, and lays out the entire

road at the width of two and one-half rods; courses and distances are given for the entire road from the beginning to the ending point.

The forty-ninth section of the act concerning roads (*Rev., p.* 1005,) makes it the duty of overseers of the highways to cause all roads within their limits and division to be opened to their full width and to remove all encroachments. If it be doubtful to him what person or persons have caused the narrowing of the public way, then he is required to call upon two justices of the peace of the county and the two surveyors of the highways of the township in which the road lies, and those officers are constituted a board or special tribunal, clothed with authority and charged with the duty of investigating and deciding upon the place and extent of such unlawful appropriation. If the investigation by said board leaves them in doubt as to the persons who have so encroached, they are required to get the full width by ordering the adjacent owners on each side to move back equally. The result of their action, whatever it may be, must, for certainty, be put in writing and signed by them, and this, their written determination, is the sole evidence of the assertion of public right against adjoining proprietors, and the only guide to the overseer in executing the duty of removal. Obviously the first duty of such board is to ascertain, if possible, the true location and lawful width of the narrowed road, whether it be laid out by surveyors of the highways under the Road act, by express dedication or long-continued public user. If it exists by virtue of the Road law, the recorded return furnishes a guide as certain as is the description of the road contained in the record of its laying. Persons called upon to act in protection of this public right under this law may safely assume that such record correctly defines such right. If the road is by dedication, the deed or other act of dedication should be resorted to. In case of ancient highways more difficulty will commonly arise in determining the true boundaries, but the extent of the public use and appropriation of lands is provable by the knowledge and observation of witnesses.

The section referred to contemplates a summary proceeding, and its provisions are quite vague and general in directing the investigation which may result in the dispossession of land-owners, but the authority conferred upon this inquisitorial body to order the removal of fences and outbuildings of private persons is far too important a one to permit an exercise of it in so summary or careless a manner as to exclude or excuse the employment of any means which are essential to legal certainty in judgment. The act does not provide for the employment of a surveyor to re-locate lost lines and positions. But where aid of that character is necessary in determining encroachments upon the highway boundary, the right and duty to call in such service is implied. The act requires no notice to be given to the adjoining owner, and it is also silent as to the particular matters to be determined by the surveyors and justices and to be certified by them. Yet notice for a reasonable time of the object, time and place of their meeting to the land-owner is indispensable. And in their determination, in writing, must be set out the parts encroached upon, by description and reference to permanent points, with such precision that the proprietors and occupants of adjacent lands, as well as the overseer of the highway, will have no difficulty in ascertaining from it where the line of the highway was determined by them to be, and how far the public officer should proceed in opening it. This the Court of Errors long since declared. *Vantilburgh* v. *Shann et al.*, 4 *Zab.* 740.

The defendants' authority was to remove, by their order, encroachments from the highway. They as judges were called upon to determine as existing facts the true outline of the road and the extent of the encroachment of each upon it, and to describe it with such certainty that the adjoining owner and the overseer would without difficulty be able to locate the line between such owner and the public. They were not there to open a road in discretion or to lay out a new road but to remove nuisances. If, with all accessible light, they were unable to determine upon the road boundary, and encroach-

ment existed, then the law directed the widening out of the road as it should be found, equally on each side.

The defendants in the present case have neither located the road as originally laid out nor resorted to the other course of widening by moving obstructions on each side, but have marked an apparently arbitrary line coincident with neither the course on which the surveyors laid the road nor its present physical bounds. In their certificate they give a centre line which begins at a station in the old road, as laid out, and ends at the old ending station; but they describe two courses in the line where originally there was but one. And as the testimony taken shows, they marked upon the ground three or four different lines of course to guide the overseer in his duty. They have not attempted to follow the original survey the location of which would have removed all difficulty. In their certificate they fail to indicate in any way where the lines of encroachment are. Had they adopted the line of the road as originally laid out it might be assumed that the opening was to be to the width of two and one-half rods as laid, and the extent of the widening so ascertained. The intentional adoption of a new and different line leaves no ground for that assumption, and the writing does not determine to what width from the line surveyed the road must be opened upon the prosecutor or upon any other adjoining owner. Yet the overseer of the highway, acting upon the strength of these proceedings, has removed fences, cut down trees and dug away the earth within the prosecutor's enclosure, dispossessing him probably of more lands than a proper and legal determination of the matter in controversy would justify.

There seems to have been no difficulty in the way of locating the highway as the surveyors of the highways laid it out. The defendants caused their line to be run out when they first went upon the ground; and it does not appear either in their certificate or in their testimony in the cause that any doubt as to its true location disturbed them. Under these circumstances they ought to have widened the road upon the line of that survey; and it was an error to depart from and abandon it as

they did. If a new location was desirable surveyors of the highways should have been applied for to lay it anew.

We should have been quite willing to sustain proceedings properly opening this road to its legal width. It is admitted that in some way it has come to be greatly lessened in its breadth and convenience in use. No one of the adjacent owners (and they appear to have lived there always) has ever contributed to this result, as their testimony shows; on the contrary, in renewing fences such owners have generously given to rather than taken from the public. The facts exist, nevertheless, that from a public road of respectable width, by the operation of unknown agencies, possibly through a phenomenal shrinkage of the earth's crust just at this locality, the road has so nearly reached a state of collapse that now it is little more than a mere path. Another effort, more carefully observing legal requirement, may secure restoration of its original proportions and give the public travel at that point the relief which it is entitled to. The present proceeding has not followed the purposes of the law, and the certificate is vague and uncertain in the respects indicated. Those errors being embraced in the prosecutor's reasons for reversing the determination of the defendants, the proceeding must be set aside.